**RESOLUTION TRUST CORPORATION, as Conservator for American Savings & Loan Association of Colorado; Resolution Trust Corporation, as Receiver for American Federal Savings and Loan Association of Colorado, successors in interest to the Federal Savings and Loan Insurance Corporation, Plaintiffs–Appellants,**

v.

**WESTGATE PARTNERS, LTD., a Colorado limited partnership, and Westgate Corporation, a Colorado corporation, Defendants–Appellees.**

No. 90–1033.

United States Court of Appeals, Tenth Circuit.

June 27, 1991.

Ann S. Duross, Asst. General Counsel, Joan E. Smiley, Sr. Counsel, and Daniel H. Kurtenbach, Sr. Atty., Federal Deposit Ins. Corp., Washington, D.C., for plaintiffs-appellants.

George V. Chesteen and James A. Halpin of Chesteen & Halpin, Littleton, Colo., for defendants-appellees.

Before TACHA, and EBEL, Circuit Judges, and VAN BEBBER, District Judge.*

EBEL, Circuit Judge.

The issue we decide is whether the Resolution Trust Corporation ("RTC"), acting as receiver for a failed savings institution in a case in which it replaced the Federal Savings and Loan Insurance Corporation ("FSLIC") as the plaintiff, properly removed the case to the federal district court in the district where the institution's principal place of business was located ("local federal district court"). The district court held that under the applicable removal statute, removal to the local federal district court was improper. We agree with the district court's interpretation of the statute and, therefore, AFFIRM.

## FACTS

On April 5, 1989, the Federal Home Loan Bank Board appointed the FSLIC as conservator for American Federal Savings and Loan Association of Colorado ("American Federal"). On June 21, 1989, the FSLIC, acting on behalf of American Federal, filed suit in the District Court for Jefferson County, Colorado, against Westgate Part-

ners, Ltd. and Westgate Corporation (collectively "Westgate"), the defendants-appellees. The gravamen of the complaint against Westgate was that Westgate had defaulted on a $8,700,000 note owed to American Federal.

On August 9, 1989, the RTC replaced the FSLIC as conservator.[1] On September 27, 1989, the RTC was appointed receiver for American Federal. Simultaneously, the RTC was appointed conservator for a newly created institution, American Savings of Colorado ("American Savings"). On September 28, 1989, American Savings purchased substantially all the assets of American Federal.

On October 10, 1989, the RTC filed a notice of removal of its suit on behalf of American Savings against Westgate to the United States District Court for the District of Colorado. The United States District Court remanded the case on the grounds that removal in this case was proper only to the United States District Court for the District of Columbia. The RTC appeals the district court's remand order.

## DISCUSSION

■ We begin with the language of the relevant statutory provision:

POWER TO REMOVE; JURISDICTION.—

(1) IN GENERAL.—Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the Corporation[2] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding.

(2) CORPORATION AS PARTY.—The Corporation shall be substituted as a party in any civil action, suit, or proceeding to which its predecessor in interest was a

---

* Honorable G. Thomas Van Bebber, District Judge for the United States District Court for the District of Kansas, sitting by designation.

1. Pursuant to the Federal Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the RTC succeeded the FSLIC as conservator or receiver for those institutions for which the FSLIC had been appointed conservator or

receiver on or after January 1, 1989. FIRREA, Pub.L. No. 101–73, 103 Stat. 183, 369 (1989) (codified at 12 U.S.C.A. § 1441a(b)(6) (West 1989 & Supp.1991)).

2. The term "Corporation," used throughout 12 U.S.C. § 1441a, refers to the Resolution Trust Corporation. § 1441a($l$)(2).

party with respect to institutions which are subject to the management agreement dated February 7, 1989, among the Federal Savings and Loan Insurance Corporation, the Federal Home Loan Bank Board and the Federal Deposit Insurance Corporation.

(3) REMOVAL AND REMAND.—The Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States District Court for the District of Columbia, or if the action, suit, or proceeding arises out of the actions of the Corporation with respect to an institution for which a conservator or a receiver has been appointed, the United States district court for the district where the institution's principal business is located. The removal of any action, suit, or proceeding shall be instituted—

(A) not later than 90 days after the date the Corporation is substituted as a party, or

(B) not later than 30 days after the date suit is filed against the Corporation, if such suit is filed after August 9, 1989 [the date of enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989].

The Corporation may appeal any order of remand entered by a United States district court.

FIRREA, 103 Stat. at 389–90 (1989) (codified 12 U.S.C.A. § 1441a(*l*) (West 1989 & Supp.1991)).[3]

The controlling language is contained in the third paragraph. Paragraph three contains references to two different federal district courts—the United States District Court for the District of Columbia and the local federal district court. The reference to the United States District Court for the District of Columbia is found in the first clause of paragraph three, which states that "[t]he Corporation may, without bond or security, remove any *such* action, suit, or proceeding from a State court to the United States District Court for the District of Columbia...." § 1441a(*l*)(3) (em-

phasis added). "[S]uch action, suit, or proceeding" must refer to the preceding paragraph in the statute, § 1441a(*l*)(2), which provides for the substitution of the RTC in ongoing litigation in which its predecessor in interest was a party. Thus, when read together, the first clause of paragraph three provides that the RTC may remove a case to the District of Columbia federal court when the RTC has been substituted as a party in a "civil action, suit, or proceeding" where the FSLIC was its predecessor in interest ("substitution case").

The reference to the local federal district court is found in the second clause in paragraph three, which states, "or if the action, suit, or proceeding *arises out of the actions of the Corporation* with respect to an institution for which a conservator or a receiver has been appointed, [then removal is proper to] the United States District Court for the district where the institution's principal business is located." *Id.* (emphasis added). Thus, pursuant to this second clause of paragraph three, the RTC can remove a case to the local federal district court if two conditions are met: (1) the "action, suit, or proceeding" must arise out of the actions of the RTC; and (2) the RTC must be acting in a conservatorship or receivership capacity with respect to the failed institution ("RTC actions case").

Clearly, the statute does not permit the RTC to remove a substitution case to the local federal district court under the second clause of paragraph three because such an "action, suit, or proceeding" cannot possibly have *arisen* out of *the actions of the RTC;* all such suits would predate the entry of the RTC, and the RTC would come into the suit only as a substituted party for its predecessor in interest. Similarly, the RTC could not remove an RTC actions case to the District of Columbia because in those cases where the "action, suit, or proceeding" does arise out of the RTC's actions, the RTC will be an initial party and not merely a substituted party as required to invoke the first clause of paragraph three. In other words, for purposes of

---

**3.** Unless otherwise stated, citations to § 1441a will refer to Title 12 of the United States code

and should not be confused with § 1441 of Title 28, which deals with removal in general.

removal under § 1441a(*l*)(3), the substitution cases and the RTC actions cases are mutually exclusive.[4]

The RTC argues that we should abandon this plain language interpretation of § 1441a(*l*)(3), and should adopt, in its place, a reading that would allow it to remove this substitution case to the local federal district court. Specifically, the RTC urges us to adopt a broad interpretation of the word "arises" such that even though the RTC was substituted for the FSLIC in this case *after* the suit was filed, the "action, suit, or proceeding" could still be said to "arise[ ] out of the actions of the Corporation." No ordinary or customary definition of the words used has been advanced in support of that interpretation nor are any such definitions apparent to us. It is not just the word "arises" that stands in the way of the RTC's argument; the immediately following phrase, "actions of the Corporation with respect to an institution," presents similar difficulties to the RTC. This phrase specifically limits the word "actions" to actions of the RTC; actions completed by the institution before the RTC became substituted as a party would not appear to satisfy the literal language of that phrase. The exceptions to our obligation to interpret a statute according to its plain language are few and far between. *See, e.g., United States v. Ron Pair Enterprises,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." (quotations and brackets omitted)); *United States v. Brown,* 333 U.S. 18, 27, 68 S.Ct. 376, 381, 92 L.Ed. 442 (1948) (a court can reject the plain language interpretation of a statute if such an interpretation would lead to "patently absurd consequences"); *Love v. Thomas,* 858 F.2d 1347, 1354 (9th Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 403 (1989) (when two provisions whose meanings, if examined individ-ually, are clear, but whose meanings, when read together, conflict, it is up to the court to interpret the provisions so that they make sense).

In support of its interpretation, the RTC seeks to invoke the "absurdity" exception to the plain meaning rule of statutory construction. *See Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 454–55, 109 S.Ct. 2558, 2566–67, 105 L.Ed.2d 377 (1989); *Brown,* 333 U.S. at 27, 68 S.Ct. at 380; *Church of the Holy Trinity v. United States,* 143 U.S. 457, 461, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). We do not find the "absurdity" exception to be applicable in this case. The "absurdity" exception to the plain language rule is a tool to be used to carry out Congress' intent—not to override it. Indeed, so long as Congress remains faithful to the Constitution, it is free to enact any number of foolish statutes. It is only where a plain language interpretation would lead to an outcome so "absurd" that Congress clearly could not have intended such an outcome, that we will employ the "absurdity" exception in order to avoid the harsh result. In effect, we presume that Congress would intend that courts not apply the plain language of a statute where it would otherwise lead to an absurdity. This link between the "absurdity" exception and congressional intent is crucial. It is not enough for a court to find that upon application of the plain meaning of a statute, a given outcome is foolish. Instead, a court so finding must be convinced that the result is so absurd that *Congress,* not the court, could not have intended such a result.

The Supreme Court in *Holy Trinity,* provided two excellent examples of this analysis:

"The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted 'that whoever drew blood in the streets should be punished with the utmost severity,' did not extend to the surgeon who opened the vein of a person that fell

---

**4.** We need not in this case address the situation of a suit which, through amendment or otherwise, might involve the RTC in both capacities as a substituted party and as a direct actor on behalf of a failed institution.

down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II., which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire, 'for he is not to be hanged because he would not stay to be burnt.' ..."

*Holy Trinity* at 461, 12 S.Ct. at 512 (citing *United States v. Kirby*, 7 Wall. 482, 486–87, 19 L.Ed. 278 (1868)). In these two cases it could not be said, without evidence to the contrary, that the legislative bodies intended the plain language to lead to such absurd results. Therefore, while the courts invoked the "absurdity" exception to avoid applying the plain language of the statutes at issue, they were, nonetheless, attempting to carry out the legislative intent.

We are not persuaded that were we to apply the plain language to the facts of this case, that *Congress* would deem the result so absurd that it could not possibly have intended such results. Indeed, were we to adopt the broad interpretation of the word "arises" proffered by the RTC, it would completely obliterate the mutual exclusivity between substitution cases and RTC actions cases—a dichotomy that Congress so clearly fashioned. We cannot say that Congress could not have intended to treat the removal of substitution cases differently from the removal of RTC actions cases.

Further, we do not agree with the RTC that the plain language interpretation of § 1441a(*l*) leads to absurd consequences in the sense of a patently and materially unreasonable result or a result that is contrary to the purpose of the statute. There is nothing "absurd" about Congress' apparent desire to allow the RTC to remove substitution cases to the District of Columbia. Similarly, there is nothing "absurd" about Congress' apparent desire to allow for the removal of RTC actions cases to the local federal district court. The RTC argues that these plain meaning interpretations of § 1441a(*l*)(3) lead to absurd consequences because they may lead to a forum which is not convenient to the litigants and the witnesses. However, there is no evidence that Congress was concerned with anyone's convenience when it enacted § 1441a(*l*). Indeed, in the legislative history, there is no evidence of Congressional intent whatsoever with respect to § 1441a(*l*).[5] Nor are we empowered to redraft the third paragraph of § 1441a(*l*) simply because we might agree with the RTC that the world would be a better place if the removal location were more convenient for litigants and witnesses.[6]

The RTC argues that it is absurd to interpret § 1441a(*l*)(3) as requiring the RTC to remove substitution cases to the District of Columbia when, in general, the RTC, as a plaintiff, could not directly bring such a suit in that district.[7] It is claimed

---

**5.** The House Report merely paraphrases § 1441a(*l*):

[This subsection] provides that suits by or against the RTC shall arise under the laws of the United States and can be removed to the District Court of the District of Columbia or if the suit arises out of actions by the RTC with respect to an institution for which a conservator or receiver has been appointed in the District Court in which the institution's principal place of business is located.

H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. at 362 (1989), U.S.Code Cong. & Admin.News 1989, pp. 86, 158.

**6.** In any event, 28 U.S.C. § 1404(a) is available for transfer of a case to another proper federal district court "for the convenience of parties and witnesses." That provision is now frequently being invoked by the United States District Court for the District of Columbia to transfer

RTC cases to local federal district courts. *See, e.g., United Sav. Bank v. Rose,* 752 F.Supp. 506, 508 (D.D.C.1990); *Asbury v. Germania Bank,* 752 F.Supp. 503, 505 (D.D.C.1990); *Belgiovine Enterprises v. City Federal Sav. Bank,* 748 F.Supp. 33, 36 (D.D.C.1990); *Piekarski v. Home Owners Sav. Bank,* 743 F.Supp. 38, 43 (D.D.C. 1990).

**7.** Although Congress specified in § 1441a(*l*) which federal courts can try *removal cases,* it did not specify which federal courts can try cases originally brought by the RTC as a plaintiff. Instead, in that situation we must look to the general venue provision of 28 U.S.C. § 1391. Under 28 U.S.C. § 1391(b), unless the defendant resides in the District of Columbia, or unless "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in the District of Columbia, or un-

that the same public policy concerns should be served by both the removal provision contained in § 1441a(*l*)(3) and the original venue provision of 28 U.S.C. § 1391, and it is argued that it is preferable to have these cases proceed in the local federal district court because the defendants ordinarily will reside in the local district and the events that gave rise to the litigation generally occur in the local district. We disagree.

We note first that if a suit is brought against the RTC as a *defendant*, there is harmony between § 1391 and § 1441a(*l*)(3) because it is likely such a suit could be brought in the first instance in the District of Columbia under § 1391, and that it could be removed by the RTC to the District of Columbia under § 1441a(*l*)(3).[8] In addition, there is no evidence whatsoever that Congress intended § 1441a(*l*)(3) to serve the same public policy served by 28 U.S.C. § 1391. Indeed, Congress chose to use very different language for § 1441a(*l*)(3) than the pre-existing language found in 28 U.S.C. § 1391. Finally, even if we were to focus solely on 28 U.S.C. § 1391 venue where the RTC files suit as a plaintiff, there is nothing irreconcilably inconsistent between 28 U.S.C. § 1391 and § 1441a(*l*)(3). One would apply the literal interpretation of § 1441a(*l*)(3) to all such removed actions involving the RTC, and the venue provisions of 28 U.S.C. § 1391 would be applied to original actions brought by the RTC as a plaintiff. There is no conflict, and therefore, no irreconcilable inconsistency.

 Courts should follow the literal language of a statute when it is clear and when it does not lead to irreconcilable inconsistencies or clearly absurd results that Congress could not have intended. It is the function of the legislative branch, not the judicial branch, to make the laws. *See* U.S. Const. art. I, § 1. *Cf. Demarest v. Manspeaker*, 884 F.2d 1343, 1346 (10th Cir. 1989), *reversed,* ── U.S. ──, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (Courts "have no authority to modify the plain language of a statute based upon what [they] wish[ ] it said. . . .") (Ebel, J. dissenting)). There is a heavy presumption that Congress meant what it said, particularly when the words are clear and not ambiguous when given their ordinary meaning. *See, e.g., American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (there is an assumption that the legislative intent is expressed by the ordinary meaning of the words used by Congress); *Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("Absent a clearly expressed legislative intention to the contrary, [the language of the statute itself] must ordinarily be regarded as conclusive."). The words chosen by Congress are a restraint upon the courts, and if we are not tethered by them in all but the most compelling of cases, then there is left no restraint effectively to corral the power of the courts from substituting their judgment of proper public policy for that of the legislature's.

Given the clarity of the language employed by Congress in § 1441a(*l*)(3), and given the lack of any irreconcilable inconsistencies between the various paragraphs and subparagraphs that make up § 1441a(*l*), and given the RTC's failure to point to any truly absurd results that would ensue from a reliance upon the plain language of § 1441a(*l*)(3) when interpreting its meaning, we conclude that the proper course is to interpret § 1441a(*l*)(3) by relying upon the plain meaning clearly suggested from the words themselves. If this

---

less the defendant may be found in the District of Columbia *and* there is "no district in which the action may otherwise be brought," the RTC, as plaintiff, could not bring an action in the District of Columbia.

**8.** It is far more likely that § 1441a(*l*)(3) will be invoked by the RTC as a defendant than as a plaintiff. It is true that under § 1441a(*l*)(3)(A), the RTC, as a plaintiff, may remove a case

within ninety days after it replaces the FSLIC. However, the RTC replaced the FSLIC in all cases on August 9, 1989. Section 1441a(b)(6). Therefore, because ninety days has long since passed, this particular clause, in all likelihood, will never again be invoked. Instead, § 1441a(*l*)(3) will be invoked only in cases where a "suit is filed *against* the Corporation. . . ." § 1441a(*l*)(3)(B) (emphasis added).

statute as written poses significant problems for the RTC, it is always open to the RTC to return to Congress to seek an amendment. Therefore, we agree with the district court that this case was improperly removed to the United States District Court for the District of Colorado.

█ The RTC, in its reply brief, requests that we remand the case to the district court with instructions that it consider transferring the case to the District of Columbia pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631.[9] While we agree with the RTC that the district court could have transferred this case to the District of Columbia in the interest of justice, the RTC never made such a request of the district court. In the absence of such a request and on this record, we cannot say that it was plain error for the district court simply to have remanded the case to the state district court. Therefore, we decline the RTC's request that we remand with instructions that the district court consider this option. The district court's decision to remand this case is AFFIRMED.

---

**9.** Under 28 U.S.C. § 1406(a), if the district court finds that "it be in the interest of justice," a party can cure a venue defect by transferring the case to the district of proper venue. Similarly, under 28 U.S.C. § 1631, if the district court finds that "it is in the interest of justice," a party can cure a jurisdictional defect by transferring the case to the court of proper jurisdiction.