**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**December 16, 2013**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

In re: SCOTT MCGOUGH; LISA
MCGOUGH,

　　　　Debtors.

_____

DAVID V. WADSWORTH,

　　　　Plaintiff - Appellant,

v.                                                          No. 12-1142

THE WORD OF LIFE CHRISTIAN
CENTER,

　　　　Defendant - Appellee.

_____

ALLIANCE DEFENDING FREEDOM,

　　　　Amicus Curiae.

**Appeal from the United States Bankruptcy Court**
**for the District of Colorado**
**(BAP 11-38)**

David V. Wadsworth, Denver, Colorado, Plaintiff - Appellant, pro se.

Lee Katherine Goldstein, (Scott T. Rodgers appearing with her on the brief), of Fairfield
and Woods, P.C., Denver, Colorado, for Defendant - Appellee

Before **O'BRIEN**, **HOLMES**, and **MATHESON**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

Section 548(a)(1)(B) of the United States Bankruptcy Code (11 U.S.C. § 548(a)(1)(B)) allows a trustee to avoid any transfer of property by a debtor made within two years before the date of the filing of bankruptcy (the "reach-back period") if the debtor (1) received less than a reasonably equivalent value in exchange for the transfer and (2) was insolvent on the date the transfer was made or became insolvent as a result of the transfer. Section 550, in turn, allows the trustee to recover transfers of property avoided under § 548 for the benefit of the bankruptcy estate.

In 1998, Congress passed the Religious Liberty and Charitable Donation Protection Act (RLCDPA), Pub. L. No. 105-183, § 3, 112 Stat. 517 (1998). The Act amended § 548 by adding a "safe harbor" provision[1] exempting transfers of charitable contributions to qualified religious or charitable organizations from § 548(a)(1)(B) so long as (1) "the amount of that contribution does not exceed 15 percent of the gross annual income [GAI] of the debtor for the year in which the transfer of the contribution is made" or (2) even if the contribution exceeds 15% of GAI, "the transfer was consistent with the practices of the debtor in making charitable contributions." 11 U.S.C. § 548(a)(2).

---

[1] This provision was referred to as a "safe harbor" provision in H.R. Report No. 105-556, 1998 WL 285820, at *9 (1998).

The sole question in this appeal is a narrow one:  If a restricted debtor transfers more than 15% of his GAI to a qualified religious or charitable organization, may the trustee avoid the entire annual transfer or only the portion exceeding 15%?  The bankruptcy court and Bankruptcy Appellate Panel (BAP) said circumstances here only permit the trustee to avoid the portion of the transfer exceeding 15%.  Because that result is contrary to the plain language of the statute, we reverse.

## I. FACTUAL BACKGROUND

The relevant facts are not in dispute.  Debtors Lisa and Scott McGough filed for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code on December 31, 2009.  David Wadsworth was appointed Trustee.  During 2008, the McGoughs made twenty-five contributions to the Word of Life Christian Center (the Center), totaling $3,478.[2]  During 2009, they made seven contributions to the Center totaling $1,280.  Their taxable income for 2008 and 2009 was $6,800 and $7,487, respectively.  They also received social security benefits in 2008 and 2009 totaling $22,036 and $23,164, respectively.

The Trustee filed an adversary proceeding against the Center seeking to recover the contributions made to it by the McGoughs in 2008 and 2009 under 11 U.S.C. §§

---

[2] Although our review of the record reveals the McGoughs made twenty-six contributions to the Center in 2008 totaling $3,488, the parties stipulated as to the quantity and amount of contributions. The bankruptcy court adopted the stipulation.  As this discrepancy does not affect our analysis, we do the same.

548(a)(1)(B) and 550.  Both parties filed motions for summary judgment.  According to the Center, because the individual amounts of each contribution made by the McGoughs to it in 2008 and 2009 did not exceed 15% of their GAI, none were avoidable under the safe harbor provision of § 548(a)(2).[3]  While recognizing that if the contributions were considered in their annual aggregate, they would exceed 15% of the McGoughs' GAI, it nevertheless claimed the Trustee could only avoid the amount of the contributions exceeding 15% of GAI, entitling it to retain the remainder.[4]  The Trustee took the opposite view:  the contributions must be considered in the aggregate and because the total contributions made by the McGoughs to the Center in 2008 and 2009 exceeded 15% of their GAI in those years, he could recover them in their entirety.

The bankruptcy court agreed with the Trustee in part:  for purposes of applying the safe harbor provision of § 548(a)(2), a debtor's contributions must be considered in their annual aggregate.  However, it sided with the Center on the avoidance issue—if the

---

[3] The parties admit the Center is a qualified religious or charitable organization for purposes of § 548(a)(2).

[4] The Center also suggested in a footnote the social security benefits received by the McGoughs in 2008 and 2009 should be used in calculating their GAI.  The bankruptcy court disagreed.  Because the Center did not raise this argument on appeal, the BAP did not address it.  The issue is not before us.

Also not before us is whether the McGoughs were insolvent on the date the contributions were made or became insolvent as a result of them—a prerequisite for the Trustee's exercise of his avoidance authority under § 548(a)(1)(B).  Although the Center contested in the bankruptcy court whether the Trustee had satisfied this prerequisite, it has not raised this argument in this appeal.

contributions exceed 15% of a debtor's GAI, only the amount exceeding 15% is subject to avoidance.  Thus, the Trustee's recovery was limited to the amount of the contributions exceeding 15% of the McGoughs' GAI in 2008 and 2009.

The Trustee appealed to the BAP.  Notably, the Center did not appeal from the bankruptcy court's decision requiring a debtor's contributions to be considered in the annual aggregate in applying § 548(a)(2).  Therefore, the only issue before the BAP was whether § 548(a)(2) allows a trustee to recover the entire amount of a charitable contribution if it exceeds 15% of GIA or only the amount in excess of 15%.  The BAP agreed with the bankruptcy court—only the amount exceeding 15% was avoidable.

## II. STANDARD OF REVIEW

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision."  *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1204 (10th Cir. 2005).  "Because the basic issue here is one of interpretation of the bankruptcy statutes and there are no disputed issues of fact, . . . our standard of review is *de novo*."  *Rupp v. United Sec. Bank (In re Kunz)*, 489 F.3d 1072, 1077 (10th Cir. 2007).

## III. DISCUSSION

The issue presented is a matter of first impression in this Circuit.  The portion of the Bankruptcy Code governing avoidance of charitable contributions, 11 U.S.C. § 548(a)(2), provides:

A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be [avoidable by the Trustee under § 548(a)(1)(B)] in any case in which—

> (A) the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or

> (B) the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

We summarize the Trustee's argument:  § 548(a)(2) is unambiguous and clearly provides a safe harbor from the trustee's avoidance power only if the "transfer" does not exceed 15% of GAI.  Thus the converse must also be true—if the "transfer" exceeds 15% of GAI, then the "transfer"—meaning the entire transfer—is subject to avoidance.  Had Congress intended for only the portion of the transfer exceeding 15% of GAI to be subject to avoidance, it would have added limiting language to that effect.  It did not.  Because § 548(a)(2) is unambiguous, the resort to legislative history is inappropriate.

The Center's argument is conveniently confusing.  On the one hand, it appears to argue § 548(a)(2) cannot be read to support the Trustee's interpretation because it fails to explicitly state that if the amount of the debtor's aggregate contributions over the course of a year exceeds 15% of the debtor's GAI, then the entire amount of the contributions is subject to avoidance.  Indeed, according to the Center, by using the phrase "in any case in which," the statute broadens the scope of the circumstances under which transfers are protected to include those portions of transfers which do not exceed 15% of GAI.  On the

- 6 -

other hand, the Center claims if the statute can reasonably be interpreted to support the Trustee's position, then it is ambiguous because it is susceptible to both the Center and Trustee's differing interpretations.  And because of this alleged ambiguity, the Center relies on the statute's legislative history, namely House Report No. 105-556, which states:

> The 15 percent safe harbor is necessary to protect the tithing practices of certain religious faiths.  It is intended to apply to transfers that a debtor makes on an aggregate basis during the . . . reachback period preceding the filing of the debtor's bankruptcy case.  Thus, the safe harbor protects annual aggregate contributions *up to 15 percent* of the debtor's gross annual income.

1998 WL 285820, at *9 (1998) (emphasis added).  According to the Center, the "up to" language indicates Congress intended to protect the amount of the contribution which falls below 15% of a debtor's GAI even if the total amount exceeds 15%.

"Our interpretation of the Bankruptcy Code starts where all such inquiries must begin:  with the language of the statute itself."  *Ransom v. FIA Card Servs.*, *N.A.*, 131 S. Ct. 716, 723 (2011) (quotations omitted).  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last:  judicial inquiry is complete."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations and quotations omitted).  *See also, BedRoc Ltd. v. United States*, 541 U.S. 176, 186-87 & n.8 (2004) (if the plain meaning of the statute is clear, resort to legislative history is

- 7 -

improper; legislative history should only be considered to interpret an ambiguous

statute).[5] As there is no ambiguity here, we look only to the words of the statute.

_____

[5] This case is a good example of one reason why resort to legislative history is problematic: its interpretation is subject to its own ambiguity. The Center relies on House Report 105-556 which states the safe harbor provision of § 548(a)(2) "protects annual aggregate contributions up to 15 percent of the debtor's gross annual income." 1998 WL 285820, at *9. While the Center interprets this statement to mean Congress intended to protect the amount of the contribution which falls below 15% of GAI even if the total amount exceeds 15%, an equally plausible interpretation is Congress intended to protect a contribution only if it does not exceed 15% of GAI.

House Report 105-556 also states one of RLCDPA's purposes is to protect "religious and charitable organizations from having to turn over to bankruptcy trustees donations these organizations receive from individuals who subsequently file for bankruptcy relief." *Id.* at *1-2. It further provides several policy considerations behind the Act: (1) the First Amendment rights of the donor and donee; (2) the use of donations by religious and charitable organizations to fund valuable services to society; and (3) an organization's lack of resources to defend against a recovery action by a trustee. *Id.* at *1-2. Again, this history does not answer the question before us. Indeed, the policies could support a *total* exemption but Congress chose instead to use the 15% limitation to balance these policies with the government's interest in avoiding fraudulent transfers which deplete the bankruptcy estate.

Finally, the Trustee points to two statements in the legislative history to support his own position. First, he points to a statement made during the House debate on the Act by Rep. Nadler saying that if the debtor's aggregate donations exceed 15%, the debtor would have to show the transfer was consistent with his or her prior pattern of charitable giving in order for the donation to be protected. The Trustee also points to a statement made in a letter from the Director of the Center for Law and Religious Freedom, who characterized the 15% limitation as establishing a bright-line test that if donations are no more than 15%, then the trustee cannot challenge them, but if they are more than 15%, then the debtor will have to prove they are consistent with past practices. Given our qualms about the probative value of legislative history, whether these statements meaningfully support the Trustee's (and our) interpretation is questionable. They do, however, show the legislative history concerning the 15% limitation is far from definitive.

Under the Center's interpretation, the 15% limit does not merely act as an "avoidable" threshold but also establishes the amount of the transfer protected from avoidance if that threshold is exceeded. It suggests this meaning flows from the phrase "in any case which," which, it argues, conveys a meaning similar to the phrase "to the extent." We reject the argument.

The phrase "in any case in which" is a legalism often used in place of "if" or "when." *See* Joseph M. Williams, Style: Ten Lessons in Clarity & Grace 90-91 (3d ed. 1989) (suggesting "if" or "when" as an alternative for the very similar phrase "under circumstances in which"). While it is not the most economical turn of phrase, long use has made its meaning plain. It is often used in statutory language where the Center's amount-indicating meaning would make no sense. *See* 47 U.S.C. § 252(e)(6) ("*In any case in which* a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court . . . ."); 28 U.S.C. § 455(a) ("Any justice or judge of the United States shall disqualify himself *in any case in which* he has a substantial interest"); 28 U.S.C. § 1605(a) ("A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States *in any case . . . in which* the foreign state has waived its immunity either explicitly or by implication"). Because of this widespread understanding of "in any case in which" as simply meaning "if" or "when," the Center's interpretation of "in any case in which" as indicating not only "if" or "when" the exception applies, but also the *amount* protected from avoidance, is vanishingly improbable.

Substituting "if" for the phrase "in any case in which" resolves any claimed ambiguity. Under § 548(a)(2), a transfer is not avoidable <u>if</u> its amount does not exceed 15% of GAI. Thus, the contrapositive must also be true—<u>if</u> the amount of a transfer exceeds 15% of GAI, the transfer is avoidable. Because there is no language limiting the amount of the transfer to be avoided, the only reasonable reading of the statute is that the amount of the transfer to be avoided is the entire amount. Nothing in the plain language of the statute indicates that, if the transfer exceeds 15% of GAI, only the portion exceeding 15% is avoidable.

The only court to have interpreted the words of this statute understood the words the same way we do. In *Murray v. Louisiana State Univ. Found. (In re Zohdi)*, the court decided the plain language of the statute subjected the entire transfer to avoidance if the transfer exceeded 15% of the debtor's GAI. 234 B.R. 371, 373 (Bankr. M.D. La. 1999). To conclude otherwise, the court reasoned, would require it to rewrite the statute to include limiting language not present in the statute. *Id.* at 375. Indeed, the court envisioned several potential "rewrites" of the statute which Congress could have adopted, but did not, to achieve the result urged by the Center in this case:

> 1. A transfer . . . shall not be considered a transfer covered under paragraph (1)(B) *in (A) an amount not to exceed 15 percent . . .*
>
> 2. A transfer . . . shall not be considered a transfer covered under paragraph (1)(B) *up to —*
>     *(A) an amount equal to 15 percent . . .*
>
> 3. A transfer . . . shall not be considered a transfer covered under paragraph (1)(B) *except to the extent* that—

- 10 -

*(A) the amount of the contribution exceeds 15 percent . . . .*

*Id.*

We agree with *Zohdi*.[6] Without language limiting the word "transfer" to that portion of the transfer exceeding 15%, the entire transfer is avoidable.

We see another problem with the Center's "does not exceed 15 percent" argument. It improperly reads key language out of the statute. According to the statute, the *contribution* shall not be avoidable if "the amount *of* that contribution does not exceed 15 percent of the [debtor's GAI]." 11 U.S.C. § 548(a)(2)(A) (emphasis added). The Center's argument makes "of" superfluous, but "of" is critical to understanding the

_____

[6] The bankruptcy court distinguished *Zohdi* on two grounds: (1) it involved a single charitable donation, and (2) it interpreted § 548(a)(2) as not requiring a debtor's contributions to be considered in their aggregate, meaning a debtor could deplete his entire estate by simply making several donations below the 15% threshold. We do not see the relevance of these distinctions. Although *Zohdi* involved a single donation exceeding 15% of the debtor's GAI, the court's analysis of § 548(a)(2) did not turn on the number of contributions involved. Similarly, the *Zohdi* court's interpretation of § 548(a)(2) as not requiring an aggregate analysis was dicta and not relevant to the court's analysis of the 15% limitation. *See Zohdi*, 234 B.R. at 380 n.20.

The Center also relies on *Universal Church v. Geltzer* to support its ambiguity argument. 463 F.3d 218 (2d Cir. 2006). There, the Second Circuit considered whether the contributions made by a debtor should be considered separately or in the annual aggregate for purposes of determining whether they exceed 15% of the debtor's GAI. *Id.* at 223. The court concluded the statute was ambiguous so it turned to the legislative history which indicated Congress intended contributions to be considered in the aggregate, not individually. *Id.* at 223-24. *Universal Church* is not helpful because it decided a different issue. Indeed, while the church attempted to argue only the amount of a contribution exceeding 15% should be avoided rather than the entire amount, the court declined to consider the argument because it was never raised on appeal to the district court. *Id.* at 228-29.

phrase "the amount of that contribution."  Properly read the phrase defines the qualifying (or non-qualifying) contribution as a discrete number.  The Center, again, would have us read it as something else, to wit:  "the amount that contribution does not exceed 15 percent." *See Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) ("[W]e must give effect to every word of a statute wherever possible."); *Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996) ("We avoid interpreting statutes in a manner that makes any part superfluous."). Giving effect to every word used, the 15% limit merely establishes when a transfer is subject to the trustee's avoidance powers, not the amount of the transfer protected if that threshold is exceeded.

Despite the statute's plain meaning, the Center argues we should nevertheless adopt its interpretation of the statute because to do otherwise would reach an absurd result—it would protect a debtor's right to donate 15% of his GAI to a charitable organization but allow a trustee to avoid the entire amount of the donations if they are one cent over the 15% threshold.  Such a result, according to the Center, would place an undue burden on churches and other charitable organizations which would have to investigate a donor's financial background in order to use funds within two years of their receipt (the reach-back period).  Moreover, according to the Center, to allow a trustee to avoid the entire transfer if it exceeds 15% of GAI would undercut the purposes of RLCDPA—to protect religious and charitable organizations from having to turn over donations they receive from individuals who subsequently file for bankruptcy and to

- 12 -

protect the rights of debtors to make religious and charitable donations up to 15% of their GAI.[7]

The absurdity doctrine is an exception to the rule that the plain and ordinary meaning of a statute controls. *Resolution Trust Corp. v. Westgate Partners, LTD*, 937 F.2d 526, 529 (10th Cir. 1991). Under this doctrine, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). In other words, where a plain language interpretation of a statute would lead to an absurd outcome which Congress clearly could not have intended, we employ the absurdity exception to avoid the absurd result. *Resolution Trust Corp.*, 937 F.2d at

---

[7] As additional support for its absurdity argument, the Center relies on 11 U.S.C. § 1325(b)(2)(A), which was amended by RLCDPA. *See* Religious Liberty and Charitable Donation Protection Act of 1998, Pub. L. No. 105-183, § 4, 112 Stat. 517 (1998). Section 1325(b)(1) prohibits a bankruptcy court from confirming a reorganization plan if the trustee or the holder of an allowed unsecured claim objects unless the plan provides that all of the debtor's projected disposable income to be received during the plan will be applied to make payments to unsecured creditors. Subsection (b)(2) defines "disposable income" as the debtor's current monthly income less amounts reasonably necessary to be expended "for charitable contribution . . . in an amount not to exceed 15 percent of gross income of the debtor." In other words, § 1325(b)(2)(A)(ii) allows a Chapter 13 debtor to make charitable contributions up to 15% of his or her gross income during the term of the plan. According to the Center, adopting the Trustee's interpretation of § 548(a)(2) would lead to an absurd result in that it would "disharmonize [§§] 548(a)(2)(A) and 1325(b)(2)(A) by treating pre-filing and post-filing payments to charities differently." We fail to see the disconnect. Section 548(a)(2), like § 1325(b)(2)(A), allows a debtor to contribute up to 15% of his income to a religious or charitable organization. Just as a Chapter 7 debtor's pre-petition contribution in excess of 15% is subject to avoidance, a Chapter 13 debtor's post-petition contribution in excess of 15% does not reduce the amount of disposable income subject to creditors.

529.  However, the absurdity rule is "a tool to be used to carry out Congress' intent—not to override it."  *Id.*  Indeed, subject to constitutional limitations, Congress "is free to enact any number of foolish statutes."  *Id.*  Therefore, it is only where we are convinced that "*Congress*, not the court, could not have intended such a result" will we apply the absurdity exception.  *Id.*  This is because "[t]here is a heavy presumption that Congress meant what it said, particularly when the words are clear and not ambiguous when given their ordinary meaning."  *Id.* at 531.  "The words chosen by Congress are a restraint upon the courts, and if we are not tethered by them in all but the most compelling of cases, then there is left no restraint . . . to corral the power of the courts from substituting their judgment of proper public policy for that of the legislature's."  *Id.*  If a party is unhappy with a statute's plain meaning, it may always seek an amendment from Congress.  *See id.* at 531-32.

Thus, "[o]ne claiming that the plain, unequivocal language of a statute produces an absurd result must surmount a formidable hurdle":

> It is not enough to show that the result is contrary to what Congress (or, perhaps more accurately, some members of Congress) desired.  In other words, we cannot reject an application of the plain meaning of the words in a statute on the ground that we are confident that Congress would have wanted a different result.  Instead, we can apply the doctrine only when it would have been unthinkable for Congress to have intended the result commanded by the words of the statute—that is, when the result would be so bizarre that Congress could not have intended it[.] Accordingly, whether some members of Congress (or even a committee) expressed a view contrary to the statute's language is beside the point.  For the same reason, we cannot reject the plain meaning of statutory language just because Congress may not have anticipated the result compelled by that language in a particular case.

*Robbins v. Chronister*, 435 F.3d 1238, 1241-42 (10th Cir. 2006) (en banc).

We see no absurdity here. The statute establishes a bright-line rule—donations not exceeding 15% of GAI are protected; donations exceeding 15% are not. While the statute may place a burden on churches and other religious and charitable organizations which may be faced with potentially having to turn over donations they receive to a trustee, that burden exists even under the Center's interpretation of the statute. Indeed, under the Center's interpretation, the burden would be even more onerous—rather than set aside the entire amount of the donation for two years, the organization would potentially only have to set aside the portion of the donation exceeding 15% of the debtor's GAI—a tedious and potentially impossible calculation for an organization to make. Nor does our interpretation of § 548(a)(2)(A) undermine the purposes of RLCDPA. It allows debtors to make donations to religious and charitable organizations up to 15% of their GAI and, to the extent the donations do not exceed that amount, they may be kept by the organization. If the Center is unhappy with the result in this case, its remedy lies with Congress, not this court.

The key flaw in the Center's absurdity argument, however, is it ignores the other protection built-in to § 548(a)(2)—even if the debtor's contribution exceeds 15% of his GAI, the entire amount is protected if it is consistent with his past charitable giving practices. This is an important provision as it is certainly not "absurd" for Congress to want to protect the normal tithing practices of an individual regardless of amount—yet subject that tithing to avoidance if it is over 15% of the debtor's GAI *and* inconsistent

- 15 -

with past practices.  It is entirely reasonable for Congress to view the latter conduct as fraudulent and subject to avoidance, especially when made by an insolvent donor within two years of filing for bankruptcy who receives less than a reasonably equivalent value in exchange for his donation, which are yet further requirements for the exercise of the trustee's avoidance powers.[8]

---

[8] Alliance Defending Freedom (ADF), a not-for-profit public interest organization providing strategic planning, training and funding to attorneys and organizations regarding religious civil liberties and family values, has filed an amicus brief in support of the Center's interpretation of § 548(a)(2).  According to ADF, allowing a trustee to avoid the entire amount of a religious or charitable contribution if it exceeds 15% of a debtor's GAI violates the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to bb-4, because it places a substantial burden on the religious exercise of the donor and recipient church without a compelling government interest.  While ADF concedes the government has an important interest in avoiding transfers which deplete the bankruptcy estate, it claims there is no compelling interest in avoiding all tithing.  In any event, according to ADF, allowing a trustee to avoid an entire tithe if it exceeds 15% of the debtor's GAI is not the least restrictive means of furthering the government's interest.  ADF claims the Center's interpretation of § 548(a)(2)—protecting religious and charitable contributions up to 15% of a debtor's GAI and permitting only those contributions exceeding that amount to be avoidable—strikes the appropriate balance between the religious liberty of the debtor and the government's interest in avoiding fraudulent transfers.

We decline to consider the RFRA argument because (1) it was not raised by the Center; (2) the issue is neither jurisdictional nor does it touch on an issue of federalism or comity which should be considered *sua sponte*; and (3) no other exceptional circumstances exist justifying our consideration of the issue.  *See Tyler v. City of Manhattan*, 118 F.3d 1400, 1403-04 (10th Cir. 1997); *see also Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178, n.4 (10th Cir. 2012) (noting that, absent "exceptional circumstances," we "keep our primary focus on the parties' arguments").  We do note, however, RFRA prohibits the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability" unless it "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling government interest."  42 U.S.C. § 2000bb-1.  A

(Continued . . .)

REVERSED and REMANDED.

---

government act imposes a substantial burden on religious exercise if it, *inter alia*, "prevents participation in conduct motivated by a sincerely held religious belief." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 (10th Cir.) (en banc) (quotations omitted), *cert. granted*, --- S. Ct. ---, 2013 WL 5297798 (2013). As stated above, § 548(a)(2) does not prevent a debtor from all tithing. It merely allows a trustee to seek to recover large contributions that are inconsistent with the debtor's past practices. Thus the statute does not burden, let alone substantially burden, legitimate tithing.